OHIO ASSOCIATION OF PUBLIC SCHOOL EMPLOYEES, LOCAL 530, Appellee,

v.

STATE EMPLOYMENT RELATIONS BOARD et al., Appellants.

[Cite as *Ohio Assn. of Pub. School Emp., Local 530 v. State Emp. Relations Bd.* (2000), 138 Ohio App.3d 832.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 99AP–1008 and 99AP–1025.

Decided Aug. 22, 2000.

*Buckley, King & Bluso* and *James E. Melle,* for appellee Ohio Association of Public School Employees, Local 530.

*Betty D. Montgomery,* Attorney General, and *Dennis R. Morgan,* Assistant Attorney General, for appellant State Employment Relations Board.

*Johnson & Angelo* and *James A. Budzik,* for appellant Springfield Local School District Board of Education.

*Kimm A. Massengill* and *R. Sean Grayson, amicus curiae* for Ohio Council 8, AFSCME, AFL–CIO.

*Downes & Hurs, Marc A. Fishel* and *Rhonda L. Greenwood, amicus curiae* for Ohio Public Employers Labor Relations Association.

*Mark E. Linder* and *Linda K. Fiely, amicus curiae* for Ohio Civil Service Employees Association, AFSCME Local 11, AFL–CIO.

*Hunter, Smith, Carnahan & Shoub, Michael J. Hunter* and *Robert R. Byard, amicus curiae* for SEIU District 1199, The Health Care and Social Service Union, SEIU, AFL–CIO.

---

BOWMAN, Presiding Judge.

Appellants, State Employment Relations Board ("SERB") and Springfield Local School District Board of Education ("Board"), appeal a decision of the Franklin County Court of Common Pleas reversing a decision of SERB issuing a cease and desist order against appellee, Ohio Association of Public School Employees, Local 530 ("Local 530"). Appellants have separately appealed the decision of the common pleas court. SERB presents the following two assignments of error:

"First Assignment of Error

"The lower court abused its discretion in reversing SERB's order on the basis that the conduct of the union was protected speech under the First Amendment of the U.S. Constitution since SERB's order finding that the union had engaged in negotiation activities directly designated representative of the board of education, in violation of R.C. 4117.11(B)(3), was supported by substantial evidence on the record as a whole and was in accordance with law.

"Second Assignment of Error

"The lower court abused its discretion by not affirming SERB's order finding that OAPSE violated R.C. 4117.11(B)(3) by unilaterally issuing a press release in contravention of the ground rules for negotiations established by the union and the board of education since SERB'S order was supported by substantial evidence on the record as a whole and was in accordance with law."

The Board presents the following two assignments of error:

"First Assignment of Error

"A.  The common pleas [court] erred to the prejudice of the board of education in reversing SERB's lawful order on the basis that the conduct of the union was protected speech under the First Amendment under the United States Constitution.

"Second Assignment of Error

"B.  The common pleas court erred in the prejudice of the board of education by reversing SERB's decision that the union violated O.R.C. § 4117.11(B)(3) by unilaterally issuing a press release in violation of the parties' collective bargaining agreement relating to ground rules for negotiations."

The Board and Local 530 were parties to a collective bargaining agreement in effect from September 1, 1990 through August 31, 1993.  In May 1993, the parties began negotiating a successor collective bargaining agreement.  The major point of contention between the parties was the Board's proposal to contract out transportation services to a private company.  On July 13, 1993, after several unsuccessful negotiation sessions, the Board declared an impasse and sought mediation;  the first mediation session was scheduled for August 28, 1993.  On July 19, 1993, Dolores Halman, the president of Local 530 and a member of Local 530's negotiating team, spoke at a board of education meeting about the negotiations between Local 530 and the Board.  The main points of Halman's statement were that Local 530's negotiating team was not being treated fairly and that the Board's representative was not bargaining in good faith. Halman also stated that subcontracting of transportation services would not be good for the school, the district, the bus drivers, or anyone involved.

At a second board of education meeting held on August 9, 1993, Halman returned, as did Marc Beallor, the OAPSE field representative and chief spokesperson for Local 530 in the pending negotiations.  Beallor stated that the subcontracting issue was not simply a matter of negotiations but, also, a matter of policy.  Beallor criticized the private company the Board proposed contracting with and stated that the main concern of the bus drivers and mechanics was the safety of the children in the school district.  He added that the main reason Local 530 opposed subcontracting was its belief that the safety of the students would be compromised.  Beallor added:

"* * * Hopefully, this matter can be voted on again, and hopefully we can resolve this issue before it reaches a point where we're in a situation where we may possibly have a strike in the district.  * * * Our members feel very strongly on this issue, they do not want subcontracting, they do not want to work for a subcontractor.  Our local met earlier this evening and because your negotiating team, your attorney declared an impasse at the last negotiating session because we won't agree to subcontracting our members authorized the negotiating committee to call a strike if necessary, and we don't want that to happen.  * * *"

Beallor also issued a press release prepared by the union which was reported in the August 11, 1993 edition of the Akron Beacon Journal.

Based upon Halman's and Beallor's statements at the school board meetings and the press release, the Board filed two unfair labor practice charges against Local 530. The first unfair labor practice charge asserted that Halman "invited the Employer [Board] to engage in public bargaining" and concluded that such action was a failure and refusal to bargain in good faith with the Board's representatives. The second unfair labor practice charge addressed Beallor's comments at the school board meeting and disclosure of information to the press and characterized his actions as direct dealing and a failure to bargain in good faith with the Board's representatives.

SERB conducted an investigation and found probable cause to believe that Local 530 had violated R.C. 4117.11(B)(1) and (3). In April 1996, a hearing officer conducted a hearing and issued a proposed order. The hearing officer found no violation of R.C. 4117.11(B)(1) but, based on the totality of the circumstances, found that Halman's and Beallor's statements at the board of education meetings violated R.C. 4117.11(B)(3). The hearing officer also found the press release violated Article 2.4 of the parties' collective bargaining agreement and that this constituted a second violation of R.C. 4117.11(B)(3). The hearing officer recommended that SERB issue an order that Local 530 cease and desist from engaging in bad faith bargaining by speaking at public meetings of the Board regarding their contract negotiations and by unilaterally issuing press releases to the media in violation of Article 2.4.

In June 1996, SERB issued an order and opinion adopting the findings of fact and conclusions of law as amended in the hearing officer's proposed order. SERB stated that bypassing the Board's authorized representative "undermines the statutory scheme, interferes with the planned process of negotiations, creates chaos in an otherwise orderly, if difficult, process and, hence, constitutes an act in contravention of the obligation to bargain in good faith." Thus, SERB found that Local 530 violated R.C. 4117.11(B)(3) when it circumvented the Board's designated representative and engaged in negotiation activities directly with the Board in a public forum. SERB discussed *In re SERB v. Dist. 1199/HCSSU/SEIU, AFL-CIO and Linda Broadstock,* SERB 96–004 (4–8–96) ("*Broadstock*"), which applied a totality of the circumstances test to determine whether there had been a violation of R.C. 4117.11(B)(3). SERB noted that, applying the totality of the circumstances test, it reached the conclusion that Local 530 had not bargained in good faith in violation of R.C. 4117.11(B)(3). Specifically, by appealing directly to members of the Board on the contracting-out issue when negotiations were still ongoing, Local 530's representatives compromised the negotiation process in their attempt to influence the Board directly while circumventing the Board's repre-

sentative. SERB also found that the news release constituted bad faith bargaining in violation of R.C. 4117.11(B)(3) because it violated Article 2.4 of the parties' collective bargaining agreement.

SERB ordered Local 530 to cease and desist from "[r]efusing to bargain collectively with a public employer and engaging in bad faith bargaining *by speaking at public meetings of the Springfield Local School District Board of Education regarding their contract negotiations,* and unilaterally issuing a press release to the media regarding negotiations in violation of Article 2.4 of the parties' collective bargaining agreement, and from otherwise violating Ohio Revised Code Section 4117.11(B)(3)." (Emphasis added.)

Local 530 appealed SERB's order and opinion to the Franklin County Court of Common Pleas pursuant to R.C. 4117.13(D). On appeal, Local 530 asserted that SERB's finding that it had violated R.C. 4117.11(B)(3) and SERB's cease and desist order violated Local 530's First Amendment rights and, accordingly, needed to be reversed.

Relying on *City of Madison, Joint School Dist. No. 8 v. Wisconsin Emp. Relations Comm.* (1976), 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376, the common pleas court found that SERB's cease and desist order was unconstitutional because the First Amendment protects a public employee's right to address an arm of local government. The court recognized that "[c]onduct or speech that is disruptive of a public meeting, personally abusive or harassing, or so designed to irrevocably break down cooperation under a collective bargaining agreement may fall outside the bounds of [*Madison* ]." The court concluded that the right of free speech exercised in the case before it did not go beyond the bounds of legitimate public commentary and, under *Madison,* was protected by the First Amendment. Further, the court noted that negotiation "is by definition a two way (or more) process of discussion or give and take on issues which hopefully leads the parties to a mutually beneficial resolution of those points." Thus, the court reversed SERB's decision to issue a cease and desist order as contrary to law.

When considering an appeal from a SERB decision on an unfair labor practice charge, the standard of review to be applied by the court of common pleas is whether there is substantial evidence to support that decision. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264, paragraph one of the syllabus. When conducting this review, it is incumbent upon the common pleas court to examine the evidence. *Id.* at 261, 533 N.E.2d at 267–268. An appellate court's review of the trial court's decision is more limited; this court is to determine only whether the trial court abused its discretion. *Id.* In turn, reviewing courts must accord due deference to SERB's interpretation of R.C. Chapter 4117. *Lorain* at paragraph two of the syllabus.

■ R.C. 4117.11(B)(3) provides that it is an unfair labor practice for an employee organization, its agents or representatives, or public employees to "* * * [r]efuse to bargain collectively with a public employer if the employee organization is recognized as the exclusive representative * * *[.]". SERB has construed R.C. 4117.11(B)(3) to require that collective bargaining negotiations must always be conducted in good faith. *Broadstock*. Whether parties have engaged in good-faith bargaining or bad-faith bargaining, is to be determined by the totality of the circumstances. *Id.*

In the present case, SERB found that Local 530's representatives had circumvented the Board's representative and negotiated directly with the Board and that this behavior violated Local 530's duty to bargain in good faith with the Board.

■ In their first assignment of error, both appellants assert that the trial court abused its discretion when it found that the disputed conduct of Local 530's representatives was protected speech under the First Amendment. The Board and SERB do not argue that the comments of Local 530's representatives would violate R.C. 4117.11(B)(3) even if they did not amount to negotiations.

Local 530 argues that the actions of its union representatives at the school board meeting did not rise to negotiating and did not compromise the negotiations process. Alternatively, Local 530 argues that R.C. 4117.11(B)(3) does not prohibit it from negotiating directly with an employer.

Thus, the key issue is whether the court of common pleas abused its discretion when it found that Halman's and Beallor's comments at the Board meetings did not constitute negotiations, and SERB's decision to the contrary was not supported by substantial evidence.

■ Black's Law Dictionary (5 Ed.Rev.1979) 934, defines "negotiation" as the "process of submission and consideration of offers until acceptable offer is made and accepted. * * * [T]he act of settling or arranging the terms and conditions of a bargain, sale, or other business transaction." Consistent with this definition, *Broadstock* found negotiation when a union representative requested a raise; this constituted a submission of an offer as to a term of an employment agreement. In contrast, the "mere expression of an opinion about a matter subject to collective bargaining, whether or not the speaker is a member of the bargaining unit," does not constitute an attempt to reach an agreement or bargain and poses no genuine threat to a policy of exclusive representation. *Madison* at 180, 97 S.Ct. at 427, (Stewart, J., concurring).

In support of its finding that Local 530 attempted to negotiate with the Board, SERB relies heavily on Beallor's statement that "[h]opefully, this matter can be voted on again, and hopefully we can resolve this issue before it reaches a point

where we're in a situation where we may possibly have a strike in the district." SERB contends that this statement is a direct attempt to negotiate with the Board and persuade it to reverse the position its bargaining representative had taken during negotiations. According to SERB, by making this statement, Beallor raised the specter of a strike unless the Board conceded to his demand that it reverse the position of its bargaining representative. Neither appellant asserts that Halman's or Beallor's comments actually disrupted the negotiations.

Local 530 argues that neither Beallor's statements nor Halman's statements amount to negotiations. Local 530 notes that neither Halman nor Beallor made proposals to the Board, nor did they directly address or discuss specific bargaining proposals of the Board, or discuss any specific contract term.

Based upon the absence of evidence in the record that Local 530's representatives submitted any offer to the Board or that the statements of Halman and Beallor had any negative or disruptive affect on negotiations, the common pleas court did not abuse its discretion when it found that the comments did not constitute negotiations. Accordingly, the common pleas court properly reversed SERB's decision finding that Local 530 had committed an unfair labor practice based upon the statements made at the board of education meetings.

For the above reasons, appellants' first assignments of error are overruled.

In their second assignments of error, both appellants assert that the common pleas court erred when it did not affirm SERB's order finding that Local 530 violated R.C. 4117.11(B)(3) when it unilaterally issued a press release in violation of Article 2.4 of their collective bargaining agreement.

Article 2.4 of the parties' 1990–1993 Master Agreement addresses the negotiations procedure and progress reports; it provides:

"2.4   Progress Reports – The parties agree that during the period of negotiations and prior to reaching an agreement to be submitted to the Board and the Union, *the proceedings of the negotiations* shall not be released to the media without the approval of both parties." (Emphasis added.)

SERB found that the following newspaper report in the August 11, 1993 edition of the Akron Beacon Journal resulted directly from a press release prepared by Local 530 and issued by Beallor. The article reads, in part, as follows:

" 'This is not a vote to go on strike. This authorizes a strike and sends a message to the school board that we are prepared to do what is legally necessary to urge the board to negotiate in good faith,' said Dolores Halman, president of the Ohio Association of Public School Employees Local 530.

"She said the main issue in negotiations is the board's plan to contract out bus drivers' and mechanics' jobs to a private firm.

"School board President Bob Collins said because of the impasse, a meeting has been set for today with federal mediator David Thorley."

SERB found that the information the union released to the Akron Beacon Journal violated Section 2.4 of the collective bargaining agreement and constituted bad-faith bargaining in violation of R.C. 4117.11(B)(3). SERB's order and opinion provide no analysis in support of its conclusion that the information in the news release was information concerning "the proceedings of the negotiations."

Local 530 appealed this finding to the common pleas court on two alternate bases: (1) Local 530 argued that SERB lacked authority to find a violation of R.C. 4117.11(B)(3) based upon the press release because the complaint did not set forth such an allegation; (2) Local 530 argued that the press release did not disclose "the proceedings of the negotiations."

The common pleas court did not err when it failed to affirm SERB's finding that Local 530 released information regarding the proceedings of the negotiations to the media in violation of Article 2.4 of the parties' collective bargaining agreement. The article contains no details about what transpired in the negotiation sessions. Neither stating that union members authorized a strike nor identifying the main issue of the negotiations reveals information about the *proceedings* of negotiations. Furthermore, that the Board's proposal to subcontract transportation services to a private company was the major issue in the bargaining sessions would have been no surprise to anyone who followed the affairs of the school district.

For the above reasons, both of appellants' second assignments of error are overruled.

Appellants' assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and KLINE, JJ., concur.

ROGER L. KLINE, J., of the Fourth Appellate District, sitting by assignment.